UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Jude Medical S.C., Inc.,

   Plaintiff,

v.             Civil No. 14-109 (JNE/JJK)
              ORDER
John Grubiak,

   Defendant.

---

Kevin P. Hickey and Kerri J. Nelson, Bassford Remele, PA, appeared for St. Jude Medical S.C., Inc.

Steven C. Kerbaugh, Anthony Ostlund Baer & Louwagie PA, appeared for John Grubiak.

---

St. Jude Medical S.C., Inc. (SJMSC), brought this action against one of its former division vice presidents, John Grubiak, for breach of contract and breach of fiduciary duty. The case is before the Court on SJMSC's Motion for Partial Summary Judgment, SJMSC's Motion to Exclude Defendant's Expert Witness Testimony, Grubiak's Motion for Summary Judgment, and Grubiak's Motion to Exclude the Report and Testimony of Christopher Schulte. For the reasons set forth below, the Court denies the motions.

**I. BACKGROUND**

SJMSC is a wholly owned subsidiary of St. Jude Medical, Inc., which develops, makes, markets, and sells a variety of medical devices that are used to diagnose and to treat cardiovascular disease and other disorders. SJMSC is responsible for marketing and selling St. Jude Medical's products in domestic and foreign markets.

From 1997 to 2013, Grubiak worked for SJMSC.  He served as a division vice president and a senior division vice president.  According to written consents issued by SJMSC's board of directors in lieu of meeting, Grubiak was an officer from 2001 to 2012.  Grubiak was responsible for hundreds of millions of dollars in revenue within an assigned territory, managed hundreds of employees, and interacted with SJMSC's customers.  He developed strategic and operating plans, and he reported to SJMSC's president.

During his employment, Grubiak executed employment agreements.  The most recent one, executed in May 2009, contained a four-year term.  In it, Grubiak agreed to "devote [his] full working time, energy and skills to promoting the business interests of SJMSC."  He also agreed not to "disclose to a third party or use for [his] personal benefit Confidential Information of SJMSC," and he agreed to "give SJMSC all assistance it reasonably requires to perfect, protect and use its rights to inventions and proprietary information."

In 2011, one of SJMSC's division vice presidents, Paul Woodstock, started to explore his employment options.  He contacted Biotronik, Inc.'s president, Joachim Langer.  In late August 2011, Woodstock and Langer met and discussed employment opportunities at Biotronik for Woodstock.  The same day, Woodstock telephoned Grubiak.

One week later, Grubiak and Langer exchanged text messages.  Many years passed since they had last communicated.

In October 2011, Woodstock, Grubiak, and Langer met in Chicago.  According to Grubiak, one reason for the meeting was for Grubiak to find out whether Biotronik was a viable option for employment.  According to Langer, he interviewed Woodstock separately for several hours after the meeting with Grubiak.  Later that month, Langer sent an e-mail whose subject was "John Grubiak SJM Agreement" to Biotronik's counsel.

In November 2011, Langer and another Biotronik employee interviewed Woodstock.  On the day of the interview, 11 telephone calls took place between Woodstock and Grubiak.

In late December 2011 or early January 2012, Langer and Woodstock spoke again about opportunities for Woodstock at Biotronik.  Langer asked Woodstock to make a presentation at Biotronik's offices in Berlin, Germany, at the end of January.

In the middle of January 2012, Grubiak took a medical leave from SJMSC.  He returned from medical leave toward the end of February 2012.

In the meantime, Woodstock prepared a presentation for Biotronik using information from SJMSC's strategic or operating plans.  Before he traveled to Berlin, Woodstock sent it to Grubiak via the e-mail address of Grubiak's wife.  Woodstock went to Biotronik's offices in Berlin in late January 2012, made the presentation, and received an offer from Biotronik within a few days of his presentation.

In early February 2012, Woodstock sent the offer to the e-mail address of Grubiak's wife and asked for guidance.  Grubiak testified that he did not see the e-mail

before his deposition in October 2014.  Woodstock resigned from SJMSC later in February 2012, and he went to work for Biotronik the next month.

A few days after Woodstock's resignation, several sales employees in New York resigned from SJMSC and went to work for Biotronik.  SJMSC sent Grubiak to New York, which had been part of Grubiak's territory, to assess SJMSC's situation there. After meeting with SJMSC's area vice president in New York, Grubiak sent a lengthy e-mail to SJMSC's president that summarized their conversation.

Approximately one month later, Grubiak contacted Biotronik to express interest in working for it.  In an e-mail dated April 5, 2012, Grubiak stated that he was looking for an employment attorney to represent his interests with respect to his employment agreement with SJMSC and an "offer from a competitive company."  On April 15, 2012, Grubiak and Langer met.  Grubiak left the meeting with the understanding that they were going to attempt to reach an agreement for Biotronik's employment of Grubiak.  In June 2012, Grubiak executed an agreement to work for Biotronik.  He continued to work for SJMSC until May 2013, when his SJMSC employment agreement expired.  He went to work for Biotronik in July 2013.

In the meantime, in March 2012, SJMSC sued Woodstock and Biotronik in state court for breach of contract and tortious interference with contract.  The action was settled in early 2014.  According to his deposition testimony, Grubiak knew about the litigation when he still worked for SJMSC.  He received a litigation-hold notice.  He did not receive any requests for information about the case, and he did not volunteer the information he had about Woodstock's plans to leave SJMSC to work at Biotronik.

4

## II.   DISCUSSION

### A.   Summary judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### 1.   Grubiak's motion

#### *Breach of contract*

Grubiak moved for summary judgment on SJMSC's claim of breach of contract, arguing that SJMSC did not sustain any damages and that he did not breach his employment agreement.  SJMSC asserted that "damages are not a required element" of a claim of breach of contract, that it has been damaged by Grubiak's breaches, and that Grubiak breached his employment agreement.

"A successful breach-of-contract claim under Minnesota law has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (internal quotation marks omitted); *see Reuter v. Jax Ltd.*, 711 F.3d 918, 920 (8th Cir. 2013) ("But, under Minnesota law, '[a] breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach.'"); *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 987 (8th Cir. 2008).[1]  According to Grubiak, SJMSC failed to establish damages because it is seeking to disgorge the compensation that it paid to him after he allegedly breached his contractual duties to SJMSC.  The Court rejects Grubiak's argument.  *See* 5A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 2145 (perm. ed., rev. vol. 2012) ("A corporate officer is not entitled to compensation for services during a period in which that officer engages in activities constituting a breach of the duty of loyalty to the corporation, or willful breach of his or her contract of employment, even though part of his or her services may have been properly performed and notwithstanding that the wrongful activities may not have actually harmed the corporation." (footnotes omitted)).

---

[1]     At the motion hearing, SJMSC indicated that it was not claiming nominal damages.  *Cf. Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 n.4 (8th Cir. 2001) ("It is likely that under Minnesota law ELC was entitled to an award of nominal damages for breach of contract . . . ."); *Geo. Benz & Sons v. Hassie*, 293 N.W. 133, 138 (Minn. 1940) ("Absent proof of actual loss only nominal damages are recoverable for breach of contractual obligation.").

"Whether an act or omission constitutes a material breach of a contract is a fact question." *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. Ct. App. 2009). Grubiak's employment agreement with SJMSC required him to "devote [his] full working time, energy and skills to promoting the business interests of SJMSC" and prohibited him from "disclos[ing] to a third party or us[ing] for [his] personal benefit Confidential Information of SJMSC." There is evidence in the record that would support a finding that he breached his employment agreement. For example, he did nothing to prevent Woodstock's presentation to Biotronik that used information from SJMSC's strategic or operating plans. Grubiak had already explored whether Biotronik presented a viable employment option and was about to negotiate his own employment agreement with Biotronik when, according to SJMSC's president, Grubiak put forth "minimal" efforts in response to the resignation of SJMSC's sales employees in New York and their employment by Biotronik. Viewing the record in the light most favorable to SJMSC, a reasonable factfinder could conclude that Grubiak breached his employment agreement.

*Breach of fiduciary duty*

Grubiak moved for summary judgment on SJMSC's claim of breach of fiduciary duty on the grounds that he did not breach a fiduciary duty and that SJMSC is not seeking compensable damages for his alleged breach. There is evidence in the record that would support findings that Grubiak owed a fiduciary duty to SJMSC as one of its officers and that he breached it. *See In re Villa Maria, Inc.*, 312 N.W.2d 921, 922-23 (Minn. 1981) (stating that corporate officer "occupies a fiduciary relationship to the corporation"). For instance, corporate records and the testimony of SJMSC's former president indicated that

Grubiak was an officer of SJMSC. Grubiak allegedly put forth "minimal" efforts in response to the resignation of SJMSC's sales employees in New York and their employment by Biotronik at a time when he had already explored employment with Biotronik and was about to negotiate an employment agreement with Biotronik. If SJMSC proves that Grubiak breached his fiduciary duties to SJMSC, forfeiture of his compensation might be appropriate. *See Bolander v. Bolander*, 703 N.W.2d 529, 549 (Minn. Ct. App. 2005).

*Affirmative defense: violation of protective order*

Grubiak moved for summary judgment on the basis of one of his affirmative defenses:

> Upon information and belief, SJMSC's Complaint is barred or limited because SJMSC violated a protective order in an action titled *St. Jude Medical, S.C., Inc. v. Paul Woodstock, Biotronik, Inc., ABC Corporation, John Doe and Jane Doe*, Court File No. 62-CV-12-2564, currently pending in Ramsey County District Court, in that its allegations in this action rely on matter designated "ATTORNEYS EYES ONLY" under the protective order.

According to Grubiak, SJMSC's claims "are based virtually exclusively on allegations regarding two e-mails sent by Woodstock to Grubiak." The e-mails were designated attorney eyes only by Biotronik under the terms of the state-court protective order. Because SJMSC used the e-mails to commence its action against Grubiak, Grubiak asserted that dismissal of SJMSC's claims is appropriate. Grubiak cited two cases to support his assertion: *Whitehead v. Gateway Chevrolet*, No. 03 C 5684, 2004 WL 316413 (N.D. Ill. Feb. 2, 2004), and *DEV Industries, Inc. v. Rockwell Graphic Systems, Inc.*, No. 91 C 7197, 1992 WL 100908 (N.D. Ill. May 4, 1992). The Court's own research

revealed cases that are inconsistent with the authority cited by Grubiak. *E.g.*, *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-H, 2013 WL 3872229, at *2 (W.D. Ky. July 24, 2013) ("[T]he Court appears to lack jurisdiction to enforce the state court issued Protective Order by striking claims in a federal case."); *Flint Hills Scientific, LLC v. Davidchack*, No. CIV. A. 00-2334-KHV, 2000 WL 33314112, at *2 (D. Kan. Mar. 27, 2000) ("None of defendant's cited cases hold that dismissal is an appropriate remedy for violation of a protective order in another case in another court."). The issue is not adequately briefed. The Court declines to dismiss SJMSC's claims at this time because of SJMSC's alleged violation of the state-court protective order.

### 2.    SJMSC's motion

#### *Breach of fiduciary duty*

Asserting that there is no genuine issue of material fact as to whether Grubiak was an officer of SJMSC, SJMSC moved for summary judgment on the issue of whether Grubiak owed a fiduciary duty to it. *See Villa Maria*, 312 N.W.2d at 922-23 (stating that a corporate officer "occupies a fiduciary relationship to the corporation"); *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 914 (Minn. Ct. App. 2008) ("Some types of relationships automatically give rise to a fiduciary relationship."). At his deposition, Grubiak testified that he had not been told he was an officer, that he had not seen documents naming him an officer, and that he was not informed of any additional responsibilities he had as an officer. Viewing the record in the light most favorable to Grubiak, a reasonable factfinder could conclude that Grubiak was not an officer. *See* 2 William Meade Fletcher, *Fletcher Cyclopedia of the Law of*

*Corporations* § 314 (perm. ed., rev. vol. 2014) ("To make a person an officer of a corporation, their consent, as well as an appointment or election, is necessary."). The Court denies SJMSC's motion on this issue.

*Affirmative defense: violation of protective order*

SJMSC moved for summary judgment on Grubiak's affirmative defense that SJMSC's claims are barred because of its violation of the state-court protective order. According to SJMSC, the affirmative defense is barred by the *Rooker–Feldman* doctrine. In the state-court case, Biotronik moved to hold SJMSC in contempt for violating the protective order by bringing an action against Grubiak based on documents designated attorney eyes only by Biotronik. Later, the state court "dismissed with prejudice" Biotronik's motion pursuant to the parties' stipulation. The Court rejects SJMSC's argument that the *Rooker–Feldman* doctrine bars Grubiak's affirmative defense for at least the following reasons: Grubiak was not a party to the state-court action, and SJMSC brought this action before Biotronik moved to hold SJMSC in contempt for violating the protective order. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("The *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").[2]

Next, SJMSC asserted that "Grubiak has no standing to assert a violation of a protective order in a case to which he was not even a party." It cited two cases to support its argument: *United States v. Civella*, 648 F.2d 1167 (8th Cir. 1981), and *United States v. Missouri Self Service Gas Co.*, 671 F. Supp. 1232 (W.D. Mo. 1987). Neither case addressed the issue raised by SJMSC's motion. *See Civella*, 648 F.2d at 1171-72 ("Our review of the case law and the federal wiretap statute indicates that a defendant may challenge evidence gathered pursuant to an interception order only if it is shown 'that it was directed at him, that the Government intercepted his conversations or that the wiretapped communications occurred at least partly on his premises.'" (footnote omitted)); *Mo. Self Service Gas*, 671 F. Supp. at 1239-40 ("[A]ll courts that have considered similar claims have consistently held that a non-party to a consent order between DOE and another firm has no standing to bring an action against DOE on the grounds that it should have received a particular benefit under the consent order."). The Court declines to dismiss Grubiak's affirmative defense on the basis of SJMSC's "standing" argument at this time.

Finally, SJMSC asserted that Grubiak's affirmative defense fails on the merits because the documents were improperly designated by Biotronik, Biotronik did not contest SJMSC's assertion that the documents were improperly designated, and the

---

[2]      With few exceptions, the parties cited cases decided before *Exxon Mobil* to support their positions regarding the *Rooker–Feldman* doctrine.

information was available through other sources.  SJMSC did not petition the state court for permission to disclose the documents.  The Court rejects SJMSC's argument.

**B.    Experts**

The parties moved to exclude the testimony of expert witnesses.  The Court has not considered the expert witnesses in resolving the motions for summary judgment.  The Court denies as moot the motions to exclude the testimony of the expert witnesses.  As part of their pre-trial submissions, the parties may submit motions in limine that seek to exclude the expert witnesses.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    SJMSC's Motion to Exclude Defendant's Expert Witness Testimony [Docket No. 58] is DENIED.

2.    SJMSC's Motion for Partial Summary Judgment [Docket No. 64] is DENIED.

3.    Grubiak's Motion to Exclude the Report and Testimony of Christopher Schulte [Docket No. 68] is DENIED.

4.    Grubiak's Motion for Summary Judgment [Docket No. 74] is DENIED.

Dated: September 10, 2015

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge